******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KELLER, J., with whom D'AURIA, J., joins, dissenting. I disagree with the majority that the records at issue in this appeal, reports prepared by members of the police department of the plaintiff Department of Mental Health and Addiction Services[1] (hospital police reports), are not privileged pursuant to General Statutes § 52-146e (a). My review of the hospital police reports reveals that they contain precisely the type of information that the legislature intended to protect through the psychiatrist-patient privilege. The reports constitute communications and records thereof pursuant to § 52-146e (a), and, because they identify two patients, including the patient who is the subject of the reports, they are also privileged identifying records, which may be disclosed only if either the patient or the patient's authorized representative consents to disclosure, or if one of the statutory exceptions to the consent requirement in § 52-146e (a) applies. Because no authorized representative has consented to disclosure and no statutory exception applies, disclosure is prohibited by § 52-146e (a).

The majority's conclusions to the contrary—that the hospital police reports are not privileged communications or records thereof because they were prepared by members of the plaintiff's police department (hospital police) and that identifying records are not privileged pursuant to § 52-146e (a)—create a two tiered system for applying the psychiatrist-patient privilege. The legislature has stated its intent to provide the same level of protection to the psychiatric records of persons who receive treatment from a public mental health institution as that afforded to the records of persons who receive treatment from a private mental health care provider. That intent is thwarted by the majority's narrow construction of § 52-146e (a). Under the majority's rule, the communications and identifying records of persons who receive private mental health care are inviolate, but the statutory privilege of a person treated in a public mental health facility is inferior. This is especially true when the person being treated has engaged in self-harming behavior or behavior harmful to others that results in any intervention or investigation by the hospital police or some other provider of security in a public mental health institution. Given the likelihood that such reports are duplicative of records prepared by mental health staff documenting such incidents, the majority's rule allows members of the public who seek otherwise privileged records to circumvent the protections afforded to patients by the psychiatrist-patient privilege. Rather than requesting the records prepared by mental health staff, one need only seek the reports prepared by the hospital police. The majority's rule runs contrary to the legislature's intent to provide equal

protection to those who receive treatment in public institutions and, because indigent persons are those most likely to turn to public institutions for treatment, provides the least protection to the most vulnerable among us.

Finally, because I conclude that the hospital police reports are privileged records not subject to disclosure pursuant to the Freedom of Information Act (FOIA), General Statutes § 1-200 et seq., I disagree with the majority's conclusion that the reports may be disclosed in redacted form pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § 1320d et seq., as implemented by the Privacy Rule, 45 C.F.R. § 160.101 et seq.

Accordingly, I respectfully dissent.

I

I disagree with the majority's conclusion that the determination of the named defendant, the Freedom of Information Commission (commission)—that the hospital police reports do not constitute communications or records for purposes of § 52-146e (a)—is supported by substantial evidence.[2] The commission's determination, which rested primarily on the fact that the reports were prepared by members of the hospital police rather than by staff more directly involved in the provision of mental health care for the patients at the Whiting Forensic Division of Connecticut Valley Hospital (Whiting), cannot be reconciled with either the decisions of this court interpreting § 52-146e (a) or the testimony presented before the commission's hearing officer.

"According to our well established standards, [r]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts." (Internal quotation marks omitted.) *Stratford Police Dept.* v. *Board of Firearms Permit Examiners*, 343 Conn. 62, 81, 272 A.3d 639 (2022). As the majority explains, because the interpretations of the commission and the plaintiff are not entitled to deference, our review of § 52-146e (a) is de novo.

I agree with much of the majority's statutory construction of the first sentence of § 52-146e (a). The majority correctly concludes that the definition of "communications and records" in General Statutes § 52-

146d (2)[3] clarifies that the first sentence of § 52-146e (a) protects only communications and records of communications. I also agree that such communications must "relat[e] to diagnosis or treatment of a patient's mental condition"; General Statutes § 52-146d (2); and that, pursuant to this court's decision in *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, 318 Conn. 769, 122 A.3d 1217 (2015) (*Freedom of Information Officer*), treatment of a patient's mental condition includes the provision of medical treatment. Id., 790–91. I also agree with the majority that records relate to the patient's diagnosis or treatment if the records are "connected by reason of an established or discoverable relation" to diagnosis or treatment. (Internal quotation marks omitted.) Finally, I agree that, pursuant to § 52-146d (2), "communications and records thereof" must be between one of three sets of communicants: the patient and a psychiatric mental health provider, a family member of the patient and a psychiatric mental health provider, or the patient, a family member or a psychiatric mental health provider and "a person participating under the supervision of a psychiatric mental health provider in the accomplishment of the objectives of diagnosis and treatment . . . ."

I disagree with one aspect of the majority's statutory construction, namely, its dismissal of the significance of the final clause of § 52-146d (2), "including communications and records which occur in or are prepared at a mental health facility . . . ." This language was added in a 1969 amendment to the statute; see Public Acts 1969, No. 819, § 1; and was intended to clarify that the privilege extends equally to patients in public mental health institutions. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1969 Sess., p. 82, remarks of Representative Mary B. Griswold ("[w]e do have protection of private patients but it has never been clearly stated that such privacy extends to patients in public institutions"); id., p. 96, remarks of Nancy Greenman ("[w]e wish to see this bill passed in order to ensure that all persons entering into psychotherapy *shall be certain of the same confidentiality* some of us have already found so helpful, and also to ensure that any of us, past or future patients, might feel perfectly free to seek help from any public facility if this should ever become necessary" (emphasis added)). This final clause of § 52-146d (2), therefore, clarifies the legislature's intent that patients receiving treatment from public mental health care providers are statutorily entitled to the same confidentiality in their records as that enjoyed by patients receiving treatment from private mental health care providers. Accordingly, this language requires that the scope of the psychiatrist-patient privilege be construed in a manner that ensures that the privilege is applied with equal effect to persons who seek treatment from public mental health care providers.

Proper construction of the interaction between the psychiatrist-patient privilege and FOIA is crucial in attaining that objective. Each of these rights, the psychiatrist-patient privilege and the right to inspect public records, claims priority in the law. Compare *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 318 Conn. 784 (noting that "the exceptions to the general rule of nondisclosure of communications between psychiatrist and patient were drafted narrowly to ensure that the confidentiality of such communications would be protected unless important countervailing considerations required their disclosure" (internal quotation marks omitted)), with *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 240 Conn. 835, 840, 694 A.2d 1241 (1997) ("the long-standing legislative policy of [FOIA] favoring the open conduct of government and free public access to government records . . . requires us to construe [its] provisions . . . to favor disclosure and to read narrowly [its] exceptions to disclosure" (citations omitted; internal quotation marks omitted)). Each of the two statutory schemes claims a broad right that cabins narrowly crafted and interpreted exceptions. This court repeatedly has recognized that "[t]he people of this state enjoy a broad privilege in the confidentiality of their psychiatric communications and records . . . and the principal purpose of that privilege is to give the patient an incentive to make full disclosure to a physician in order to obtain effective treatment free from the embarrassment and invasion of privacy . . . . Accordingly, the exceptions to the general rule of nondisclosure of communications between psychiatrist and patient were drafted narrowly to ensure that the confidentiality of such communications would be protected unless important countervailing considerations required their disclosure."[4] (Citations omitted; internal quotation marks omitted.) *Falco* v. *Institute of Living*, 254 Conn. 321, 328, 757 A.2d 571 (2000). We also have recognized "the long-standing legislative policy of [FOIA] favoring the open conduct of government and free public access to government records. . . . We consistently have held that this policy requires us to construe the provisions of [FOIA] to favor disclosure and to read narrowly [its] exceptions to disclosure." (Citations omitted; internal quotation marks omitted.) *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, 330 Conn. 372, 383, 194 A.3d 759 (2018).

This court has never addressed the inherent tension between the two statutory schemes. The legislature, however, already has expressed its intent regarding how to balance these competing rights by stating its intent to provide the same level of protection to persons receiving treatment from public and private mental health care providers. More than in any other area of

the law, FOIA has the greatest potential to disrupt the legislature's stated intent. Application of FOIA to communications and records or identifying records that are privileged pursuant to § 52-146e (a) cannot dilute the protection afforded to patients who receive treatment from public mental health care providers without contravening the legislature's stated intent to maintain equal protection for patients treated by private and public mental health care providers. When FOIA and the psychiatrist-patient privilege collide, the privilege must be protected. The legislature has already identified the required and appropriate limits to the privilege in the exceptions set forth in General Statutes §§ 52-146f through 52-146i. A request to inspect records or to receive a copy of records pursuant to FOIA is not one of those exceptions.[5] Accordingly, when a communication or record has been deemed to be protected by the psychiatrist-patient privilege, it is protected from disclosure in its entirety, not merely protected from unredacted disclosure.

With these statutory principles in mind, I turn to the issue of whether the commission's determination that the hospital police reports are not communications or records thereof pursuant to § 52-146e (a) was supported by substantial evidence in the record. The commission determined that the reports are not "communications" or "records" as defined in § 52-146d (2) because (1) they do not "relat[e] to diagnosis and treatment of a patient's mental condition," and (2) they are not communications or records thereof "between the patient and a psychiatric mental health provider, or between a member of the patient's family and a psychiatric mental health provider, or between any of such persons and a person participating under the supervision of a psychiatric mental health provider in the accomplishment of the objectives of diagnosis and treatment . . . ." General Statutes § 52-146d (2). Integral to the commission's conclusion was the fact that the reports were prepared by members of the hospital police.

I agree with the majority that the hospital police reports "relate to" diagnosis or treatment pursuant to § 52-146d (2). For two reasons, however, I disagree with the majority's suggestion that, although the reports "relate to" diagnosis or treatment, they somehow also do not because the "purpose" of the reports is not to be used in the diagnosis or treatment of the patient but, rather, to investigate the incident that caused the patient's death. First, confining the meaning of "relating to" in the manner suggested by the majority is inconsistent with the broad definition of that phrase. In order for the reports to relate to diagnosis or treatment, they need not have that as their purpose. If the legislature had intended to require that records be used for the purpose of diagnosis or treatment in order to be protected, it could have said so. It did not. The hospital police reports, therefore, "relate to" diagnosis or treat-

ment if they are connected by reason of an established or discoverable relation to diagnosis or treatment. See, e.g., *Lombardo's Ravioli Kitchen, Inc.* v. *Ryan*, 268 Conn. 222, 233, 842 A.2d 1089 (2004) (defining "related" as "having relationship: connected by reason of an established or discoverable relation" (internal quotation marks omitted)).

As I explain in this opinion, the hospital police reports document the treatment, albeit unsuccessful, provided to the patient, the patient's mental health diagnosis, his statements and actions prior to and during the medical emergency, as well as the observations of the mental health staff of the patient's symptoms and responses to treatment during the course of the emergency. Those facts are more than sufficient to establish the broad connection necessary to support the conclusion that the reports are related to diagnosis or treatment.

Second, the majority's suggestion that the hospital police reports served solely investigative purposes does not find support in the record. During the hearing before the commissioner, the hearing officer asked Diana Lejardi, the plaintiff's freedom of information officer, whether certain hospital police reports would be "used for the diagnosis or treatment of [a patient]," and whether "medical personnel at Whiting . . . would . . . look at the [reports] in order to make their decisions about treatment . . . ." I note that the hearing officer's inquiry indicates that he incorrectly understood the term "relating to" to be limited to "used for" the purpose of diagnosis or treatment. Even with this incorrect, narrow framing of the inquiry, Lejardi responded that "there may be information [in hospital police reports] . . . that . . . the medical team or treatment team may use . . . ." When the hearing officer rephrased his inquiry to be consistent with the statutory language, Lejardi provided a more definitive response. Specifically, the hearing officer asked Lejardi whether hospital police reports "could contain medical or psychiatric information that's relevant to the treatment of [a patient]," and, without qualification, Lejardi responded, "yes."[6]

In support of its determination that the hospital police reports do not relate to diagnosis or treatment, the commission stated that "the . . . reports prepared by [the hospital police] do not reflect diagnosis or treatment made by others." That statement is belied by the reports themselves, which, as I explained, summarize in detail both the treatment provided to the patient and the observations of medical and mental health staff regarding the patient's symptoms and responses to the emergency medical treatment provided to him. In addition, from the information that the majority concludes must be disclosed, the public will learn of the nature of the patient's commitment, his multiple diagnoses, his perceived level of dangerousness, his required level of supervision, some of his prior concerning behaviors,

as well as statements that he made to mental health staff and that staff made to him, which are indisputably communications. Without question, in light of this court's holding in *Freedom of Information Officer* that the provision of physical medical treatment at inpatient facilities is encompassed within mental health treatment; *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 318 Conn. 790–91; the hospital police reports relate to the patient's treatment and diagnosis. The commission's determination otherwise does not find support in the record and is grounded on an incorrect construction of the phrase "relating to" in § 52-146d (2).

I offer a final, general observation on the requirement that records relate to diagnosis or treatment. This court has not yet had occasion to consider whether records created after the death of a patient fall within the protection of § 52-146e (a). The statutory scheme, however, contemplates that the protection of the privilege continues following the death of a patient. In order to disclose records that are privileged pursuant to § 52-146e (a), unless the records fall under a statutory exception, one must first obtain the consent of the patient or the patient's authorized representative. Section 52-146d (1) defines "authorized representative" to include, "if a patient is deceased, his or her personal representative or next of kin . . . ." General Statutes § 52-146d (1) (B); see also *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 318 Conn. 771 (applying privilege to records of patient who had died decades before request was filed pursuant to FOIA). Although the records at issue in *Freedom of Information Officer* were created prior to the patient's death, nothing in that decision or in the statutory scheme precludes the application of the privilege to such records. Indeed, given the emergent nature of the medical incident in the present case, it would have been impossible to create such records while the patient remained alive. Some of the reports were created within twenty-four hours of the patient's death.

If the legislature had intended to restrict the privilege to records that were created during the patient's life, it could have designated the required connection between the records and diagnosis or treatment more narrowly, such as limiting the privilege to records *used* in diagnosis or treatment.

I next consider the requirement in § 52-146d (2) that the communications and records thereof must be "between the patient and a psychiatric mental health provider, or between a member of the patient's family and a psychiatric mental health provider, or between any of such persons and a person participating under the supervision of a psychiatric mental health provider

in the accomplishment of the objectives of diagnosis and treatment . . . ." It is significant that the hospital police reports include communications between different members of Whiting's mental health staff and between mental health staff and the patient. The reports, therefore, must be evaluated on two levels. First, whether the reports are communications between one of the three required sets of communicants, and, second, whether the communications documented in the reports are between any of the three sets of communicants.

In concluding that the hospital police reports were not communications between any of the required sets of communicants, the commission gave no consideration to the fact that the reports include communications among mental health staff and between mental health staff and the patient. It relied solely on its determination that hospital police officers "do not participate in the diagnosis or treatment of a patient's mental condition . . . ." That determination requires a more concrete link between the officers and diagnosis and treatment than is supported by the language of § 52-146d (2), which requires only that the officers work "under the supervision of a psychiatric mental health provider in the accomplishment of the objectives of diagnosis and treatment . . . ." The commission also ignored the communications documented in the hospital police reports among the mental health staff and between the mental health staff and the patient.

Contrary to the commission's conclusion, the testimony provided before the hearing officer established that the hospital police officers who prepared the reports are "person[s]" who "participat[e] under the supervision of a psychiatric mental health provider in the accomplishment of the objectives of diagnosis and treatment . . . ." General Statutes § 52-146d (2). With respect to the requirement that the participation of the hospital police officers be "under the supervision of a psychiatric mental health provider"; General Statutes § 52-146d (2); it is undisputed that the officers are stationed and employed at Whiting, and that, at the time the reports were created, Whiting was under the supervision of its chief executive officer, Michael Norko, a forensic psychiatrist. The record therefore establishes that the hospital police officers participated under the supervision of a psychiatric mental health provider.

With respect to the requirement that the participation of the hospital police officers be "in the accomplishment of the objectives of diagnosis and treatment"; General Statutes § 52-146d (2); the hospital police reports themselves, which detail the treatment administered to the patient and document information related to diagnosis, provide the best demonstration that the officers' work served this purpose. Additionally, Lejardi testified before the hearing officer that, because Whiting is a maximum security facility, the hospital police

are sometimes required to assist in dealing with patients who exhibit severe behaviors. She further testified that the officers receive specific training for their positions, interact with Whiting patients and staff daily, and are aware of the patients' behaviors and triggers. I agree with the trial court's observation that this testimony established that "[t]he [hospital] police work integrally with the mental health care providers at Whiting . . . to deliver overall mental health care. The dedicated police force maintains order and promotes the safety of staff and patients as psychiatric services are delivered. Given the type of patients and psychiatric services delivered at Whiting . . . it would not be reasonably possible to deliver the treatment provided without the services of the [hospital] police."

On the basis of this record, I conclude that the hospital police worked "in the accomplishment of the objectives of diagnosis and treatment . . . ." General Statutes § 52-146d (2).[7] That is, their services provide a necessary foundation for the provision of diagnosis and treatment of patients. Their role, therefore, is one that serves "the accomplishment of the objectives of diagnosis and treatment . . . ." General Statutes § 52-146d (2). By requiring instead that the hospital police participate in diagnosis and treatment directly, the commission relied on a misinterpretation of § 52-146d (2) and did not properly apply the law to the facts of the case. Its conclusion, therefore, was not supported by substantial evidence in the record.

As I noted previously, the commission also gave no effect to the inclusion in the hospital police reports of communications between the patient and Whiting staff members and between different staff members. The reports, therefore, are not only, in and of themselves, protected communications, but are also records of privileged communications. Included in the reports are direct quotes of statements that the patient made to two forensic treatment specialists, communications between medical care providers, communications between mental health staff, a direct quote from a different patient communicating with mental health staff, and communications between mental health staff and the medical doctor on call on the night of the incident. I acknowledge that some of the reports do not record communications between patients or staff. It is also true that the reports that include such communications also incorporate information in addition to such communications. Nothing in § 52-146d (2), however, suggests that portions of records should be scrutinized to determine which portions constitute records of privileged communications and which do not, or that there is some percentage threshold that determines whether hybrid records constitute records of privileged communications. Accordingly, I conclude that the commission improperly failed to give any effect to the privileged communications recorded in the hospital police reports.

Because the hospital police reports are privileged records pursuant to § 52-146e (a), they are not public records pursuant to FOIA. The exemption claimed by the plaintiff, which is set forth in General Statutes § 1-210 (a), provides in relevant part: "*Except as otherwise provided by any federal law or state statute*, all records maintained or kept on file by any public agency . . . shall be public records and every person shall have the right to (1) inspect such records . . . (2) copy such records . . . or (3) receive a copy of such records . . . ." (Emphasis added.) The plain language of § 1-210 (a) provides that records that fall within the otherwise provided by law exception are not "public records" for purposes of FOIA. This court has held that this exemption applies to "federal and state laws that, by their terms, provide for confidentiality of records or some other similar shield from public disclosure." *Chief of Police* v. *Freedom of Information Commission*, 252 Conn. 377, 399, 746 A.2d 1264 (2000). Because § 52-146e (a) expressly provides for confidentiality of records, the exemption to disclosure in § 1-210 (a) applies and the hospital police reports are not public records pursuant to FOIA. See General Statutes § 1-210 (a); see also *Commissioner of Public Safety* v. *Freedom of Information Commission*, 204 Conn. 609, 623, 529 A.2d 692 (1987) (conclusion that records fell within exemption to disclosure set forth in predecessor to § 1-210 (a) disposed of administrative appeal because "records [that] are not governed by . . . FOIA do not fall within the jurisdiction of the [commission]").

## II

I disagree with the majority's narrow interpretation of the scope of protection afforded by the second sentence of § 52-146e (a), which protects "communications and records or the substance or any part or any resume thereof" that identifies a patient by prohibiting the disclosure or transmittal of such records without the consent of the patient or his authorized representative, "[e]xcept as provided in sections 52-146f to 52-146i, inclusive . . . ."[8] General Statutes § 52-146e (a). The majority blunts the effect of the second sentence of § 52-146e (a) by ignoring the consent requirement and statutorily enumerated exceptions thereto, stating that "the only information that is privileged under § 52-146e (a) is 'the substance . . . part or . . . resume' of 'communications and records as defined in section 52-146d (2)' . . . ." (Footnote omitted.) The majority effectively revises § 52-146e (a) by deleting the second sentence and incorporating the phrase "the substance . . . part or . . . resume thereof" into the first sentence of the statute. Contrary to the language of § 52-146e (a) that expressly prohibits disclosure of such records without first obtaining a patient's consent or demonstrating that one of the statutory exceptions applies, the majority concludes that they are required to be disclosed

pursuant to FOIA. According to the majority, the only measure required before disclosing these statutorily privileged records is the redaction of the patient's name, and very little else, despite the commission's finding that the requesting parties knew the patient's name, a fact that renders redaction meaningless. That narrow interpretation not only conflicts with the plain language of the § 52-146e (a) but also fails to consider related statutes, which clarify the legislature's intent to give broad power to the patient or the patient's authorized representative to withhold consent and which demonstrate that the legislature already has identified the appropriate exceptions when consent is not required prior to disclosure. The majority's reading of § 52-146e (a) also conflicts with our controlling case law and flouts the legislature's stated public policy of providing the same level of protection to those who receive treatment at public and private mental health care institutions.

The determination of the scope of protection afforded by § 52-146e (a) to records that identify a patient presents an issue of statutory interpretation, over which we exercise plenary review, guided by established principles for discerning legislative intent. See, e.g., *Fay* v. *Merrill*, 336 Conn. 432, 446, 246 A.3d 970 (2020) (describing plain meaning rule, as set forth in General Statutes § 1-2z, and principles for discerning legislative intent).

My review of § 52-146e (a) reveals that its protection of identifying records sweeps broadly, protecting more than communications and records, and establishing a clearly defined and narrow path to permissible disclosure, a path that was not followed in the present case. The second sentence of § 52-146e (a) provides: "Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative."

In addition to protecting communications and records themselves, the second sentence of § 52-146e (a) protects the "substance" of such communications or records, "any part" of such communications or records, and "any resume" of such communications or records.[9] Therefore, a record that identifies a patient—for example, a hospital police report—is privileged if the record includes the substance or any part of a privileged communication or record, or if the record constitutes a "resume" or summary of a privileged communication or record.[10] The hospital police reports, which include the substance of and summarize privileged communications and are themselves, in part, privileged communications, satisfy this requirement. This provision ensured, until today, that a person filing a request under FOIA

could not circumvent the psychiatrist-patient privilege by requesting a communication or record prepared by someone other than a psychiatric mental health care provider that duplicates in whole, part, or summary form, the same privileged information that would otherwise be protected by § 52-146e (a). Under the majority's analysis, however, that is now permitted.

Related statutes, which the majority does not consider, make clear that the statutory scheme grants the patient or the patient's authorized representative an extraordinary measure of control over the disclosure of identifying records and provides a detailed, comprehensive list of the applicable exceptions to the consent requirement. The statutory scheme clearly defines the narrow path to disclosure. An identifying record that is privileged pursuant to § 52-146e (a) can be disclosed only if one of two conditions is met: (1) the patient or his authorized representative consents to the disclosure, or (2) one of the statutory exceptions applies. As I noted previously, the filing of a request pursuant to FOIA is *not* one of the exceptions to the consent requirement.[11]

The requirement that the individual seeking disclosure must first obtain the patient's consent is not readily circumscribed. Only "the patient or his authorized representative" may give consent for disclosure. General Statutes § 52-146e (a). Section 52-146d (1) defines "authorized representative" as "(A) a person empowered by a patient to assert the confidentiality of communications or records which are privileged under sections 52-146c to 52-146i, inclusive, or (B) if a patient is deceased, his or her personal representative or next of kin, or (C) if a patient is incompetent to assert or waive his privileges hereunder, (i) a guardian or conservator who has been or is appointed to act for the patient, or (ii) for the purpose of maintaining confidentiality until a guardian or conservator is appointed, the patient's nearest relative . . . ."

The scope of consent, when given, is defined narrowly, authorizing disclosure only to the person or agency designated in the consent and only for the specific use designated in the consent. See General Statutes § 52-146e (b). ("[a]ny consent given to waive the confidentiality shall specify *to what person or agency* the information is to be disclosed and *to what use* it will be put" (emphasis added)) Additionally, pursuant to § 52-146e (c), the patient or the patient's authorized representative may withdraw consent at any time. The power to withhold, limit, or withdraw consent does not end with the patient's death. As I observed previously, § 52-146d (1) provides that, if a patient is deceased, the patient's "authorized representative" is "his or her personal representative or next of kin . . . ." General Statutes § 52-146d (1) (B).

If a patient or the patient's authorized representative does not consent to disclosure, the privilege may be

overcome if one of the exceptions enumerated in §§ 52-146f through 52-146i applies.[12] The exceptions are comprehensive. No consent is required for disclosure when (1) the disclosure is to other persons or mental health care providers engaged in the diagnosis or treatment of the patient; General Statutes § 52-146f (1); (2) the mental health care provider determines that there is a substantial risk of imminent physical injury by the patient to himself or others; General Statutes § 52-146f (2); (3) the disclosure is to individuals or agencies involved in the collection of fees for the mental health services provided to the patient; General Statutes § 52-146f (3); (4) the disclosure is in certain court proceedings, including conservatorship and competency hearings, is limited to issues involving the patient's mental condition, and the patient was informed prior to making the communications that they would be admissible; General Statutes § 52-146f (4); (5) in a civil proceeding, the patient, or a representative or beneficiary of a deceased patient, has introduced the patient's mental condition as an element of a claim or defense, and the court has found that the interests of justice require disclosure; General Statutes § 52-146f (5); (6) the disclosure is to the Commissioner of Public Health or the Commissioner of Mental Health and Addiction Services in the context of an inspection, investigation, or examination of a mental health institution's communications or records; General Statutes § 52-146f (6); (7) the disclosure is to the immediate family or legal representative of a victim of a homicide committed by a patient who has been adjudicated not guilty by reason of mental disease or defect pursuant to General Statutes § 53a-13, provided that the request is not later than six years after such adjudication and the records shall be available only during the pendency and for use in a civil action relating to the patient; General Statutes § 52-146f (7); (8) a provider of behavioral health services that contracts with the plaintiff requests payment, and disclosure is to the plaintiff for the limited purpose of determining whether payment is warranted and to make the payment; General Statutes § 52-146f (8); (9) the disclosure is to a person engaged in research, limited to records necessary for such research, the director of the mental health facility has reviewed and approved the research plan, and the director and researcher remain responsible for preserving the patient's anonymity; General Statutes § 52-146g; or (10) the disclosure is requested from individuals or facilities under contract with the plaintiff by the Commissioner of Mental Health and Addiction Services, pursuant to his or her obligation under General Statutes § 17a-451 "to maintain the overall responsibility for the care and treatment of persons with psychiatric disorders or substance use disorders." General Statutes § 52-146h.

This court has held that no exceptions are available beyond those statutorily enumerated and that it is "con-

trary to the language of [§ 52-146e] and the intent of the legislature for courts to make discretionary case-by-case determinations of when the privilege may be overridden." *Falco* v. *Institute of Living*, supra, 254 Conn. 331. That conclusion is consistent with the legislative history of § 52-146e. Specifically, when the psychiatrist-patient privilege was first enacted in 1961, legislators considered whether to amend the statute to allow a trial court to determine on a case-by-case basis whether in "justice and equity" the privilege should be invoked. 9 H.R. Proc., Pt. 8, 1961 Sess., p. 3946, remarks of Representative Homer G. Scoville; id. (proposing amendment to allow courts to consider "justice and equity" in determining whether to apply privilege). That amendment was rejected after other representatives spoke against it, arguing that the amendment ran the risk that a patient's decision not to disclose privileged information could be "overruled" by a judge.[13] See, e.g., id., p. 3948, remarks of Representative Nicholas B. Eddy. Others contended that allowing a judge to weigh in would eviscerate the privilege. See, e.g., id., p. 3950, remarks of Representative Robert J. Testo. If the legislature had intended that a request pursuant to FOIA should constitute an exception to the psychiatrist-patient privilege, it would have created an additional statutory exception. It did not.

The majority's suggestion that the redaction of the patient's name is somehow sufficient to safeguard the patient's privilege rings particularly hollow in the present case, in which the commission found that both complainants, Josh Kovner and The Hartford Courant, "know the identity of the patient . . . ." Given that finding, which is not challenged on appeal, the redaction ordered by the majority is a purely mechanical application of § 52-146e (a), without any meaningful effect in protecting the patient's privilege.

The majority's narrow interpretation of the protection provided to identifying records directly contradicts this court's controlling case law. This court has stated that "the protection of communications that identify a patient are central to the purpose of . . . [§] 52-146e (a) [which] specifically prohibits the disclosure or transmission of any communications or records that would identify a patient . . . ." (Internal quotation marks omitted.) *Falco* v. *Institute of Living*, supra, 254 Conn. 328–29. In *Falco*, the *only* information at issue was the name, home address, and social security number of an inpatient at a mental health facility. Id., 323. This court held that the purely administrative information was protected from disclosure by the statutory privilege. Id., 329. The court explained: "The confidentiality of a patient's identity is as essential to the statutory purpose of preserving the therapeutic relationship as the confidentiality of any other information in a patient's communications and records." Id.

The majority claims that, because the parties in *Falco* agreed that § 52-146e (a) applied, this court did not consider whether the records at issue in that case fell under the protection of § 52-146e (a). Even if I were to accept the majority's implicit premise—that this court would accept as its starting point, without any inquiry, a potentially incorrect interpretation of a statute merely because the parties agreed on that incorrect interpretation—that is not what happened in *Falco*. Rather, in that decision, the court focused on the aspect of the statute on which the parties disagreed—"whether the psychiatrist-patient privilege against disclosure, pursuant to . . . § 52-146e, is subject to any exceptions beyond those enacted by the legislature." (Footnote omitted.) Id., 322–23. By necessity, however, the court also discussed whether the records at issue were privileged pursuant to the statute. See id., 328–29.

An excerpt from *Falco* demonstrates that the majority incorrectly represents this court's analysis in that case. In support of its conclusion that § 52-146e (a) protects records that identify a patient, the court in *Falco* stated: "Section 52-146e (a) specifically prohibits the disclosure or transmission of any communications or records that would 'identify a patient . . . .' Section 52-146d provides that the phrase ' "identify a patient" refer[s] to communications and records which contain (A) names or other descriptive data from which a person acquainted with the patient might reasonably recognize the patient as the person referred to,[14] or (B) codes or numbers which are in general use outside of the mental health facility which prepared the communications and records . . . .' Further, the fact that an explicit exception contained in subdivision (3) of § 52-146f permits the disclosure of a patient's 'name, address and . . . [t]hat the person was in fact a patient' for purposes of collection disputes between the hospital and the patient, lends weight to our conclusion that *the general rule against disclosure applies with equal force to identity as to other information.*" (Emphasis added; footnote added.) *Falco* v. *Institute of Living*, supra, 254 Conn 329. That analysis is clearly a statutory construction of the meaning and scope of the protection afforded to identifying records, regardless of how the majority chooses to characterize it. Consistent with this court's decision in *Falco*, therefore, because the hospital police reports at issue in the present case identify the patient, they are privileged records.

### III

As I stated at the beginning of this opinion, the combined effect of the majority's two conclusions—that the hospital police reports are not privileged communications or records thereof because they were prepared by members of the hospital police and that identifying records are not privileged pursuant to § 52-146e (a)—guts the privilege of persons who receive mental health

treatment from public mental health care providers, contrary to the intent of the legislature. The majority ignores the reality of treatment at Whiting, namely, that the hospital police, whose services provide a necessary foundation for the provision of safe, quality care to patients, routinely prepare reports that document incidents that occur at the hospital. Some of those reports, like those at issue in this appeal, include precisely the type of information that the psychiatrist-patient privilege is designed to protect. Undoubtedly, this same information is also routinely documented in reports prepared by staff members who directly provide mental health and medical care to the patients. Under the rule crafted by the majority, the second category of reports are likely protected by the patient-psychiatrist privilege. A member of the public may obtain the identical information, however, simply by requesting the hospital police reports. The majority's rule thus allows the public to circumvent the protections afforded to patients by the psychiatrist-patient privilege.

The majority undermines the equal protection the legislature sought to afford to those receiving treatment from public mental health care providers by declining to give effect to the extensive statutory protections given to records that identify a patient. No consent was given, or even sought, for the release of the patient's privileged identifying records. No statutory exception applies. Yet, the majority orders the release of the records despite the commission's finding that those requesting them knew the patient's name.

Finally, I observe that the majority opinion is contrary to the principal purpose of the psychiatrist-patient privilege, which is "to give the patient an incentive to make full disclosure to a physician in order to obtain effective treatment free from the embarrassment and invasion of privacy which could result from a doctor's testimony." *State* v. *White*, 169 Conn. 223, 234–35, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975). No one should be deterred from receiving treatment from a public mental health care provider due to fears that his or her private information is less protected because he or she cannot afford treatment from a private provider. In addition to the risk that embarrassing, acutely personal information may be revealed, persons seeking mental health treatment risk the stigma grafted onto the mentally ill by our society. Unfortunately, that stigma persists, and its effects are devastating to our societal mental health. In 1999, the Surgeon General of the United States reported: "The stigma that envelops mental illness deters people from seeking treatment. Stigma assumes many forms, both subtle and overt. It appears as prejudice and discrimination, fear, distrust and stereotyping. It prompts many people to avoid working, socializing, and living with people who have a mental disorder. Stigma impedes people from seeking help for fear that the confidential-

ity of their diagnosis or treatment will be breached. . . . Powerful and pervasive, stigma prevents people from acknowledging their own mental health problems, much less disclosing them to others." U.S. Dept. of Health & Human Services, Mental Health: A Report of the Surgeon General (1999) p. 454, available at https:// profiles.nlm.nih.gov/spotlight/nn/catalog/nlm:nlmuid-101584932X120-doc (last visited August 21, 2023). Relevant to many patients in Whiting, "involuntary commitment and hospitalization generally have been found to have an even greater stigmatizing effect than being perceived as mentally ill or receiving outpatient treatment." A. Bornstein, Note, "The Facts of Stigma: What's Missing from the Procedural Due Process of Mental Health Commitment," 18 Yale J. Health Policy, L. & Ethics 127, 137 (2018). Hospital police and other security providers in mental health institutions often intervene when a patient is exhibiting severe and concerning behaviors that treatment seeks to prevent or control. If such information is so easily exposed to the public, how do we as a society protect a recovered person's reputation and guarantee that person a future free of societal stigma? Undercutting the level of protection afforded to those who receive care from public mental health care providers risks increasing the effect of stigma in deterring people from seeking treatment.

For the foregoing reasons, I respectfully dissent.

[1] The Commissioner of Mental Health and Addiction Services is also a plaintiff. In the interest of simplicity, I refer in this opinion to the Department of Mental Health and Addiction Services as the plaintiff.

[2] General Statutes § 52-146e (a) provides: "All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative."

[3] General Statutes § 52-146d (2) provides: " 'Communications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatric mental health provider, or between a member of the patient's family and a psychiatric mental health provider, or between any of such persons and a person participating under the supervision of a psychiatric mental health provider in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility . . . ."

Although § 52-146d was the subject of technical amendments in 2019; see Public Acts 2019, No. 19-98, § 24; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, I refer to the current revision of the statute.

[4] There is no support for the majority's assertion that this court has characterized the psychiatrist-patient privilege as "broad" *because* § 52-146d (2) defines communications to include exchanges between three different sets of communicants. That assertion minimizes the significance of our characterization of the privilege as broad. The privilege provides broad protection and included within that principle is that exceptions are construed narrowly. See, e.g., *Falco* v. *Institute of Living*, 254 Conn. 321, 328, 757 A.2d 571 (2000).

[5] The majority accuses me of "miss[ing] the mark" for criticizing it for providing indigent persons with less protection than those who can afford to obtain treatment from a private mental health care provider and claims that the differential treatment is simply the result of the application of FOIA. The majority's discussion of the tension between the two statutory schemes

implicitly assumes that FOIA is an exception to the psychiatrist-patient privilege, fails to address the lack of such an exception in §§ 52-146f through 52-146i, and fails to account for the legislature's stated policy of providing the same level of protection to patients receiving treatment from public and private mental health care providers. Accordingly, although the majority claims that "[§] 52-146e (a) has the same coverage and limitations regardless of whether the patient seeks treatment at a state operated mental health treatment facility or a private hospital," that is no longer true because the majority has added an exception to § 52-146e (a): FOIA. See *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987) ("[i]n areas where the legislature has spoken . . . the primary responsibility for formulating public policy must remain with the legislature"). It is therefore the majority's failure to give effect to the intent of the legislature, as evidenced by the legislative history of No. 819, § 1, of the 1969 Public Acts, as well as its failure to consider statutes related to and, in fact, expressly referenced by § 52-146e (a), that result in the lower level of protection afforded to indigent persons in this state who must receive mental health treatment from public mental health care providers. See General Statutes § 1-2z ("[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes").

The exception to disclosure under FOIA for records that would compromise security at Whiting; see General Statutes § 1-210 (b) (18); has no bearing on this issue. That exception references materials such as security manuals, including emergency plans contained or referred to therein, engineering and architectural drawings of Whiting's facilities, operational specifications of security systems, training manuals, internal security audits, minutes or recordings of staff meetings and logs or documents revealing the movement of patients. See General Statutes § 1-210 (b) (18) (A) through (G). The mere fact that FOIA provides an exception to disclosure for these types of materials in relation to Whiting does not support the proposition that FOIA is an exception to the psychiatrist-patient privilege.

[6] This court's holding in *Freedom of Information Officer* that records documenting medical treatment relate to a patient's mental health treatment; *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 318 Conn. 790–91; logically extends to records that document information relating to the diagnosis of a medical condition.

[7] The majority reasons that this requirement is met only if those who prepared the records were participating in the accomplishment of the objectives of diagnosis and treatment *at the time that they prepared the records*. The insertion of this language into § 52-146d (2) gratuitously narrows its scope, inconsistent with this court's repeated recognition that this court construes the privilege broadly. See *Falco* v. *Institute of Living*, supra, 254 Conn. 328. Section 52-146d (2) requires only that this group of communicants are persons "participating under the supervision of a psychiatric mental health provider in the accomplishment of the objectives of diagnosis and treatment . . . ." As I have observed, Lejardi's testimony supports the conclusion that even the more narrow definition of this class of communicants is met in the present case. As a matter of statutory interpretation, however, I disagree with the majority's narrow reading of § 52-146d (2).

[8] General Statutes § 52-146d (4) defines "identifiable" and "identify a patient" as "communications and records which contain (A) names or other descriptive data from which a person acquainted with the patient might reasonably recognize the patient as the person referred to, or (B) codes or numbers which are in general use outside of the mental health facility which prepared the communications and records . . . ."

[9] I disagree with the majority's suggestion that we may not consider this language in § 52-146e (a). The plaintiff has relied on § 52-146e (a) as support for its claim that the hospital police reports are privileged and has relied specifically on the statute's protection of records that identify a patient. That claim requires us to construe and apply the statutory language, including the second sentence of § 52-146e (a), to determine whether the plaintiff properly has refused disclosure on the basis of § 52-146e (a).

[10] The term "resume" is not defined in the statutory scheme. One dictionary defines "resume" as "a summing up: a condensed statement . . . ." Webster's Third New International Dictionary (2002) p. 1937.

[11] Even in the more compelling context of a criminal defendant's claim that the failure to disclose a witness' psychiatric records violates the defendant's right to confrontation, the records may not be disclosed without the witness' consent. See, e.g., *State* v. *Slimskey*, 257 Conn. 842, 855, 779 A.2d

723 (2001) (following in camera review of records, if court determines records are probative of witness' credibility, state must obtain witness' waiver of privilege prior to disclosure). If the witness refuses to consent to disclosure of probative psychiatric records, the testimony of the witness is stricken. Id., 855–56.

I acknowledge that a criminal defendant may be entitled to a witness' psychiatric records in the absence of the consent of the witness when the defendant claims that the privileged records are material to a claim of self-defense. See, e.g., *State* v. *Fay*, 326 Conn. 742, 745–46, 167 A.3d 897 (2017). The defendant's burden in demonstrating that the privilege is overridden by the defendant's constitutional right to present a defense, however, is high. Before a court may undertake an in camera review of the witness' psychiatric records, "the accused first must demonstrate a compelling need for the privileged records, a showing predicated on the relevance of the records to the claim of self-defense, the potential significance of the records in establishing that defense, and the unavailability of alternative sources of similar information." Id., 751. Members of the public filing FOIA requests are not required to meet such a burden. Significantly, there was no claim in the present case of a compelling need for the hospital police reports.

[12] I note that, although the language of § 52-146e (a) suggests that §§ 52-146f through 52-146i set forth exceptions to the consent requirement, § 52-146i pertains only to the labeling of confidential records when they are disclosed.

[13] Setting aside the legislature's concerns about judicial discretion, there is nevertheless a big difference between a court's carefully applying the privilege in a litigated case in which the person who is the subject of the records, or an authorized representative thereof, will have notice and a right to be heard, and the commission's release of a person's confidential records to honor the interest of any random member of the public. The press (in all of its varied permutations), coworkers, and even nosy neighbors can easily manipulate access to someone's psychiatric records if they know the person's name or sufficient details as to the timing of or certain occurrences during the person's hospitalization. There is no bar to subsequently naming the patient when one files a request for records under FOIA. Only the keeper of the records and the commission will be responsible for protecting the patient's identity at the time the disclosure is ordered.

[14] Kovner and The Hartford Courant, for example, knew the name of the patient in the present case. It was therefore impossible for the plaintiffs to disclose the hospital police reports to them without identifying him.